STONER *v.* COLVIN, et ux.

No. 41072          April 20, 1959          110 So. 2d 920

*Henley, Jones & Henley,* Jackson and Hazlehurst; *Griffin Norquist,* Yazoo City, for appellants.

*John S. Holmes, William H. Barbour,* Yazoo City, for appellees.

ETHRIDGE, J.

The main issue in this case relates to the validity of an order consolidating for trial separate actions by different plaintiffs, against a common defendant, for injuries arising out of the same accident. We hold that the order is valid, and affirm the judgments of the circuit court.

The appellees, Arthur H. Colvin and his wife, Mrs. Arthur H. Colvin, filed separate suits against Mrs. Lacy Stoner, appellant, to recover damages for personal injuries received from an automobile collision. The court ordered the suits to be consolidated for trial. The jury rendered a verdict for Mr. Colvin in the amount of $35,000, and for Mrs. Colvin in the amount of $25,000. Separate judgments were entered accordingly, from which this appeal was taken.

Mr. and Mrs. Colvin were returning from Florida via Jackson to their home in Kansas. They were riding in a Dodge automobile which was being driven by Delphis Colvin, their son, 34 years of age. Around seven A. M. on January 25, 1958, they left Jackson, Mississippi, and, while crossing the Yazoo River bridge on Highway 49W, one mile west of Yazoo City, at about 8:30 A. M., a Cadillac automobile driven by appellant, Mrs. Lacy Stoner, collided with them in a head-on crash in appellees' lane of traffic, which was the north lane on the bridge. The appellees and their son were ''knocked out,'' and received serious injuries. Mrs. Stoner was also injured.

Appellees charged in their separate declarations that Mrs. Stoner was driving negligently at an excessive rate of speed; she failed to have her car under control; and she negligently drove from her own proper lane of travel completely across the center line and directly into

the automobile in which appellees were riding. Appellant's answer denied she was guilty of any negligence alleged in the declaration. She asserted that she was confronted by a sudden emergency due to the icy condition of the bridge, which caused her car to slip and slide on the ice, and which prevented her from controlling it; and that the collision resulted from a pure accident, for which defendant was not liable.

Delphis Colvin, the driver of the Dodge automobile, testified that his father was sitting on the front seat with him, and his mother was on the back seat. As he was crossing the bridge, he saw the Cadillac of appellant a distance of 500 to 600 feet away. He was driving at a speed of 40 to 45 miles an hour, and she was traveling at a faster speed. When he first saw the Cadillac, it was in its right lane of traffic, but it then angled across the highway. He took his foot off the accelerator in order to permit the Cadillac to get back in its own lane of traffic, but it headed straight toward him and hit his car. The Cadillac driven by appellant did not slide or skid.

Mrs. Colvin testified practically to the same effect. She said that she saw appellant's car approaching at a fast rate of speed. When "she first came in view, she was on her side, and she gradually came across the lane on our side, and I thought she would get back, but instead she headed straight into us." Appellant did not slide or slip, and did not go from side to side.

Mrs. Stoner, the appellant, testified that she lived at Holly Bluff, about 25 miles west of Yazoo City, and she had an appointment in Yazoo City at 8:30 A. M. The first thing she knew, her car was skidding on the bridge. She tried to straighten it out, and made two or three attempts to do so, but she was cross-wise of the road most of the time, and, suddenly, as she neared the top of the bridge, her car was skidding, she was in the wrong lane, and the wreck was almost instantaneous. She was

rendered unconscious. She testified that her average speed was 60 miles per hour, but she slowed down for the bridge; however, she did not estimate the speed she was making. She admitted she told Mrs. Colvin that the accident was her fault. She explained there was nothing that she could do to have avoided the collision, as the bridge was covered with ice, and it was not malicious or negligent on her part; that she was endeavoring to control her car and get on her side.

A plat of the bridge and a number of photographs, made by the highway patrolman a few minutes after the accident, were introduced in evidence without objection. An examination of these photographs and the plat show the head-on collision between the two cars occurred in the north lane of traffic, or the appellees' proper lane. Over twenty witnesses testified with reference to the conditions of the bridge, particularly with reference to ice. The evidence was highly conflicting. About half of the witnesses said there was no ice on the bridge, and about the same number testified there was ice on the bridge. A number of witnesses testified that they crossed the bridge from the west side at approximately 6:30 or 7 o'clock on the morning of the collision, there was no ice, and they had no trouble crossing it. Some of the witnesses for defendant said there was ice and the bridge was slippery; and some said that they skidded when they crossed the bridge. Several witnesses for both appellees and appellant testified there were no skid marks or evidence of sliding behind appellant's Cadillac automobile.

The appellant argues that the court erred in refusing her requested peremptory instruction. The contention, in effect, is that appellant's testimony, that the reason she was on the wrong side or in the wrong lane of traffic was due to her car having skidded on the ice, was absolutely undisputed. There were three eye-witnesses to this accident who testified—Delphis Colvin, Mrs. Ar-

thur Colvin and Mrs. Stoner. The testimony of the Colvins is that Mrs. Stoner's car did not slip or slide, but headed straight into them at a fast rate of speed.

██ █ The rule is well settled that all the evidence, and all of the reasonable inferences that may be drawn therefrom, must be taken as true in favor of the party against whom a peremptory instruction is asked. Thomas v. Miss. Products Company, 208 Miss. 506, 44 So. 2d 556, and authorities there cited. ██ █ The jury had the right to accept the testimony of the Colvins and reject that of the appellant, which they evidently did; and also the right to decide the conflict of testimony with reference to the condition of the bridge. The verdict of the jury is amply supported by the testimony of the eyewitnesses and the physical facts.

The appellant argues that a number of instructions were erroneously granted appellees, and others erroneously refused appellant; and that these actions constitute reversible error. ██ █ We have examined carefully all of the instructions granted the appellees, and find that, when they are taken together with the seventeen given appellant, the instructions furnish a correct guide for the jury and do not contain any reversible error. Mississippi Central Railroad Company v. Hardy, 88 Miss. 732, 41 So. 505 (1906).

The appellant argues that the court erred in consolidating the two cases for trial, over her objections.

Although the trial court did not describe in its order the type of consolidation, nevertheless, there were separate instructions, and separate verdicts and judgments in the two actions. In other words, the cases were consolidated *for trial*. The injury to both of appellees arose out of the same accident in which appellant was involved.

I. C. J. S., Actions, Section 107, states: ''The term 'consolidation' is used in three different senses. First, where several actions are combined into one and lose their separate identity and become a single action in

which a single judgment is rendered; second, where all except one of several actions are stayed until one is tried, in which case the judgment in the one is conclusive as to the others; *third, where several actions are ordered to be tried together but each retains its separate character and requires the entry of a separate judgment.* The failure to distinguish between these methods of procedure which are entirely distinct, the two latter, strictly speaking, not being a consolidation, a fact which has not always been noted, has caused some confusion and conflict in the cases. The first method is what may be termed 'actual consolidation,' and occurs where two or more actions are united into one and tried as such, and judgment rendered accordingly. The second, sometimes termed the 'consolidation rule,' and also designated as a 'quasi consolidation' . . . . . , involves a stay of proceedings in all but one of the cases, which is tried, and the adjudication in that case made decisive of the others, and was introduced into the English courts in the time of Lord Mansfield, where it was employed chiefly in insurance cases. The third involves a trial of several actions together . . . . . and . . . . . in this proceeding each case retains its identity and distinctive characteristics in all other matters except the one of joint trial.'' (Emphasis ours)

There are no Mississippi statutes dealing with consolidation of actions. In the past this Court, in establishing rules for consolidation of actions, has recognized that courts of general jurisdiction have inherent power to consolidate different actions when the circumstances authorize such course. Columbus & Greenville Railroad Co. v. Mississippi Clinic, 152 Miss. 869, 120 So. 187 (1929); 1 C. J. S., Actions, Section 109.

Several other established approaches to consolidation in this State are: (1) Whether a consolidation should be ordered is within the sound discretion of the trial court. Planters Oil Mill v. Yazoo & M. V. Railroad Co.,

153 Miss. 712, 121 So. 138 (1929); Gwin v. Fountain, 159 Miss. 619, 649, 126 So. 810 (1930). (2) Consolidation of actions in proper cases serves many sound purposes and should be liberally construed. The object is to avoid a multiplicity of suits, to prevent delay, to clear congested dockets, to simplify the work of the trial court, and to save unnecessary costs or expenses. 1 C. J. S., Actions, Section 108; Planters Oil Mill v. Yazoo & M. V. Railroad Co., *supra*. (3) In determining whether consolidation is permissible in the absence of statute, this Court has generally followed the weight of authority elsewhere. Columbus & Greenville Railroad Co. v. Mississippi Clinic, *supra*. (4) This Court has not considered before the question of the trial court's power to consolidate for trial separate actions by different plaintiffs against a common defendant for damages arising out of the same accident. (5) There are no Mississippi statutes limiting or preventing consolidations in such a situation. Hence the law is not established in this respect, and, with proper restrictions, it is within the power of this Court to declare what the common law of this State is. Planters Oil Mill v. Yazoo & Miss. V. Railroad Co., *supra*.

There was no actual consolidation of actions by merging them together. The court's order simply consolidated the actions *for trial*. Each case retained its identity and characteristics in all other matters except the one of joint trial.

88 C. J. S., Trial, Section 6, discusses at length limited consolidation for trial. ██ █ It recognizes that a court of general jurisdiction has inherent power to order such a trial, ██ under proper circumstances and in its sound discretion. See also 1 Am. Jur., Actions, Sections 92-95. In the same text, 1958 Supplement, Section 94.1, it is said:

"In the majority of cases the consolidation for trial of actions for damages arising out of the same accident

has been held to be proper, so long as the rights of a party are not prejudiced thereby, even though some of the parties are not parties to all of the actions or the nature of the damages sought or other issues involved may be different. This rule has been applied where parties to the several actions are identical, and generally, though not invariably, where the actions are brought by different plaintiffs against common defendants or by the same plaintiffs against different defendants.''

Discussing the numerous cases dealing with this question, the annotation in 104 A. L. R. 62, 70 (1936), points out that, in most of the cases, the permitting of the consolidation for trial of two or more actions for damages arising out of the same accident has not been held improper because of the fact that the nature of the damages for which recovery was sought was not the same in all the actions. Cited in support thereof is Mobile, J. & K. C. Railroad Co. v. Hicks, 91 Miss. 273, 362-363, 46 So. 360 (1907) (circuit court).

In addition to *Hicks,* two other Mississippi cases have recognized in effect the right of a trial court in its sound discretion to consolidate for trial separate actions by different plaintiffs against common defendants. Gwin v. Fountain, *supra,* 159 Miss. 648-649, and Lundy v. Greenville Bank & Trust Co., 179 Miss. 282, 321, 174 So. 802 (1937), involved suits in chancery. The great weight of authority reflects that the same rule applies at law and in equity with reference to the consolidation for trial of separate actions by different plaintiffs against common defendants for damages arising out of the same accident. The same reasons are applicable to both courts. We think that should be the rule in Mississippi, within the sound discretion of the trial court.

However, consolidation for trial should not be ordered where it would be injurious or prejudicial to one or more of the parties; or would deprive a party of a

substantial right; or would tend to confuse the issues and the trier of facts. 104 A. L. R. 62. Pertinent limitations on consolidation for trial are well described in Giguere v. Yellow Cab Co., 59 R. I. 248, 195 A. 214 (1937), as summarized in 88 C. J. S., page 27: ''Discretionary power of trial court to order cases tried together should be exercised with great caution and only after careful consideration of all facts and circumstances to determine whether necessary requirements for consolidation are present, and whether ends of justice will be served and substantial rights of all parties involved preserved, and, if doubt exists as to the advisability of consolidating cases, order to try cases together should not be entered.''

Considering all of the circumstances in this case, in the light of the above stated principles, we do not think that the trial court abused its discretion in ordering a limited consolidation for trial of these two actions.

■■ ■ Appellant argues the verdicts were excessive, and the court erred in overruling her motion for a new trial. Mr. Colvin, 73 years of age, received serious and permanent injuries. In the collision his head went through the windshield, which resulted in a fractured skull and a concussion. In addition, he received a laceration over the right eye, bruises and contusions over his body, and a comminuted fracture of the hand. His condition was regarded by Dr. Darrington as precarious. He remained in the hospital 22 days. ■■ ■ Mrs. Colvin, 55 years of age, received multiple abrasions over her body and extremities, a bleeding wound over her left eye, and bruises about her face. The wound on her forehead was ''a jagged three or four inch laceration of the forehead over the left eye extending over into the upper eye lid,'' which required several stitches and left a scar. She had a fractured rib, and a ''whiplash injury'' to the neck. She complained of pain in her eye, soreness in the scar, and blurring of her vision. Her doctor

thought the trauma could produce the blurring of vision by disturbing the fluid circulation of the eye. ██ ██ The amount of damages to be awarded in personal injury cases is peculiarly within the province of the jury. We do not think the damages awarded were excessive. The other assignments of error are without merit.

Affirmed.

*McGehee, C. J.,* and *Hall, Arrington* and *Gillespie, JJ.,* concur.